---

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____   District of   _____Delaware_____
                                                    (State)

Case number *(if known)*: _____   Chapter   11   _____

☐ Check if this is an amended filing

---

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy          04/16

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Performance Sports Group Ltd. |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | Bauer Performance Sports Ltd. |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number (EIN)** | 981221514 |

4. **Debtor's address**

| **Principal place of business** | **Mailing address, if different from principal place of business** |
|---|---|
| 100   Domain Drive | |
| Number   Street | Number   Street |
| | |
| Exeter   NH   03833 | |
| City   State   ZIP Code | City   State   ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Rockingham | |
| County | Number   Street |
| | |
| | City   State   ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website (URL)** | http://www.performancesportsgroup.com/ |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: _____ |

Debtor    Performance Sports Group Ltd. _____  Case number *(if known)* _____
            Name

| | |
|---|---|
| **7.** **Describe debtor's business** | A. *Check one:* |

       ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
       ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
       ☐ Railroad (as defined in 11 U.S.C. § 101(44))
       ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
       ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
       ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
       ☒ None of the above

       B. *Check all that apply:*
       ☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
       ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
       ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

       C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .

       7139

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**

       *Check one:*
       ☐ Chapter 7
       ☐ Chapter 9
       ☒ Chapter 11.  *Check all that apply:*

           ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,566,050 on a consolidated basis (amount subject to adjustment on 4/01/19 and every 3 years after that).
           ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
           ☐ A plan is being filed with this petition.
           ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
           ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.
           ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
       ☐ Chapter 12

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

       ☒ No
       ☐ Yes.  District _____  When _____ Case number _____
                                  MM / DD / YYY
                  District _____  When _____ Case number _____
                                  MM / DD / YYY

Debtor    Performance Sports Group Ltd.          Case number *(if known)* _____
        Name

---

**10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

     List all cases. If more than 1, attach a separate list.

☐ No
☒ Yes.

   Debtor    See Attachment A      Relationship _____

   District    District of Delaware      When _____
                                                         MM / DD / YYY

   Case number, if known _____

---

**11.** **Why is the case filed in *this district*?**

     *Check all that apply:*

☐   Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒   A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12.** **Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

     **Why does the property need immediate attention?**   *(Check all that apply.)*

☐   It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
     What is the hazard? _____

☐   It needs to be physically secured or protected from the weather.

☐   It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐   Other _____

     **Where is the property?** _____
                                         Number      Street

                                         City                          State      ZIP Code

     **Is the property insured?**

☐   No.

☐   Yes.   Insurance agency _____

           Contact name _____

           Phone _____

---

Debtor  Performance Sports Group Ltd.                                    Case number *(if known)*
        Name

| | Statistical and administrative information |
|---|---|

**13.** **Debtor's estimation of available funds**

*Check one:*
☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14.** **Estimated number of creditors**

**(Consolidated with all Debtors)**

☐ 1-49                    ☐ 1,000-5,000              ☐ 25,001-50,000
☐ 50-99                   ☐ 5,001-10,000             ☐ 50,000-100,000
☐ 100-199                 ☒ 10,001-25,000            ☐ More than 100,000
☐ 200-999

**15.** **Estimated assets**

**(Consolidated with all Debtors)**

☐ $0-$50,000              ☐ $1,000,001-$10 million       ☒ $500,000,001-$1 billion
☐ $50,001-$100,000        ☐ $10,000,001-$50 million      ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000       ☐ $50,000,001-$100 million     ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million     ☐ $100,000,001-$500 million    ☐ More than $50 billion

**16.** **Estimated liabilities**

**(Consolidated with all Debtors)**

☐ $0-$50,000              ☐ $1,000,001-$10 million       ☒ $500,000,001-$1 billion
☐ $50,001-$100,000        ☐ $10,000,001-$50 million      ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000       ☐ $50,000,001-$100 million     ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million     ☐ $100,000,001-$500 million    ☐ More than $50 billion

| | Request for Relief, Declaration, and Signatures |
|---|---|

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17.** **Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   10 - 31 - 2016
             MM / DD / YYYY

x _[signature]_                                   Brian J. Fox
Signature of authorized representative of debtor   Printed name

Title   Chief Restructuring Officer

Debtor   Performance Sports Group Ltd.                                    Case number *(if known)*
         Name

18.   **Signature of attorney**        x  *Pauline K. Morgan*              Date  10/31/2016
                                          Signature of attorney for debtor        MM / DD / YYYY

                                          Pauline K. Morgan
                                          Printed Name

                                          Young Conaway Stargatt & Taylor, LLP
                                          Firm name

                                          1000 North King Street
                                          Number      Street

                                          Wilmington                    DE              19801
                                          City                          State           Zip Code

                                          (302) 571 - 6600              pmorgan@ycst.com
                                          Contact phone                 Email address

                                          3650                          DE
                                          Bar number                    State

Debtor  Performance Sports Group Ltd. _____     Case number *(if known)* _____
Name

## ATTACHMENT A TO VOLUNTARY PETITION

### Pending Bankruptcy Cases Filed by Affiliated Entities

On the date hereof, each of the related entities listed below, including the debtor in this chapter 11 case (collectively, the "Debtors"), will file or have filed a petition in this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). Contemporaneously with the filing of their voluntary petitions, the Debtors filed a motion requesting that the Court consolidate their chapter 11 cases for administrative purposes only.

**The Debtors are the following entities:**

BPS US Holdings Inc. (46-4698341)

Bauer Hockey, Inc. (03-0273094)

Easton Baseball / Softball Inc. (46-4685670)

Bauer Hockey Retail Inc. (35-2516663)

Bauer Performance Sports Uniforms Inc. (46-2241095)

Performance Lacrosse Group Inc. (04-2944200)

BPS Diamond Sports Inc. (46-2485909)

PSG Innovation Inc. (36-4819408)

Performance Sports Group Ltd. (981221514)

KBAU Holdings Canada, Inc. (818445751)

Bauer Hockey Retail Corp. (77968-1899)

Easton Baseball / Softball Corp. (98-1164068)

PSG Innovation Corp. (819162165)

Bauer Hockey Corp. (896494465)

BPS Canada Intermediate Corp. (809834633)

BPS Diamond Sports Corp. (816678049)

Bauer Performance Sports Uniforms Corp. (809042203)

Performance Lacrosse Group Corp. (821221249)

Official Form 201A (12/15)

*[If debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11 of the Bankruptcy Code, this Exhibit "A" shall be completed and attached to the petition.]*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                                             :
                                                             :
In re:                                                       :
                                                             :    Chapter 11
Performance Sports Group Ltd.                                :
                                                             :    Case No. 16– (____)
                       Debtor.                               :
                                                             :    (Joint Administration Pending)
                                                             :
-------------------------------------------------------------x
```

## EXHIBIT "A" TO VOLUNTARY PETITION

1.   If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is 1-6506.

2.   The following financial data is the latest available information and refers to the debtor's condition on September 30, 2016.

|     |                                                        |              |
|-----|--------------------------------------------------------|--------------|
| a.  | Total assets:                                          | $594,196,000 |
| b.  | Total debts (including debts listed in 2.c., below):   | $607,818,000 |
| c.  | Debt securities held by more than 500 holders:         | None         |

Approximate number of holders:

| | | | | |
|---|---|---|---|---|
| Secured ☐ | Unsecured ☐ | Subordinated ☐ | $_____ | _____ |
| Secured ☐ | Unsecured ☐ | Subordinated ☐ | $_____ | _____ |
| Secured ☐ | Unsecured ☐ | Subordinated ☐ | $_____ | _____ |
| Secured ☐ | Unsecured ☐ | Subordinated ☐ | $_____ | _____ |
| Secured ☐ | Unsecured ☐ | Subordinated ☐ | $_____ | _____ |

d.   Number of shares of preferred stock          None

e.   Number of shares of common stock             45,566,680

Comments, if any: _____

3.     Brief description of the debtor's business: Performance Sports Group Ltd. (NYSE: PSG) (TSX: PSG) is a leading developer and manufacturer of ice hockey, roller hockey, lacrosse, baseball and softball sports equipment, as well as related apparel and soccer apparel. The Company is the global leader in hockey with the strongest and most recognized brand, and is a leader in North America in baseball and softball. Its products are marketed under the BAUER, MISSION, MAVERIK, CASCADE, INARIA, COMBAT and EASTON brand names and are distributed by sales representatives and independent distributors throughout the world.  In addition, the Company distributes its hockey products through its Burlington, Massachusetts and Bloomington, Minnesota "Own The Moment" Hockey Experience retail stores.

4.     List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of the debtor:

As of October 17, 2016:

| Name | Percentage |
|---|---|
| Sagard Capital Partners, L.P. | 16.9% |
| Brookfield Asset Management Inc. (TSX:BAM.A) | 13.2% |
| Coliseum Capital Management, LLC | 9.8% |
| Boston Partners Global Investors, Inc. | 5.5% |

## SECRETARIAL CERTIFICATE

The undersigned, being the secretary of Performance Sports Group Ltd., a corporation governed by the *Business Corporations Act* (British Columbia) (the "Company"), hereby certifies as follows:

1.  I am the duly qualified and elected secretary of the Company and, as such, am familiar with the facts herein certified, and I am duly authorized to certify the same on behalf of the Company.

2.  Attached hereto is a true and complete copy of the resolutions of the board of directors (the "Board") of the Company, duly adopted at a properly convened meeting of the Board on October 30, 2016 by unanimous vote of the directors of the Company.

3.  Such resolutions have not been amended, altered, annulled, rescinded, or revoked, and are in full force and effect as of the date hereof. There exist no other subsequent resolutions of the Board of the Company relating to the matters set forth in the resolution attached hereto.

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the 30th day of October, 2016

*/s/ Michael J. Wall*
Michael J. Wall
Executive Vice President, General Counsel
and Corporate Secretary

01:19469380.1

6635379 v1

## PERFORMANCE SPORTS GROUP LTD.

### RESOLUTIONS BY UNANIMOUS CONSENT OF THE BOARD OF DIRECTORS

Upon motion duly made, seconded, and carried, the following resolutions were adopted by the unanimous vote of the directors present at a duly called meeting of the board of directors (the "**Board**") of Performance Sports Group Ltd. (the "**Company**"), a British Columbia corporation, at which a quorum was present, in each case in accordance with the *Business Corporations Act* (British Columbia).

**WHEREAS**, the Board has reviewed and considered the financial and operational condition of the Company and its subsidiaries, including Bauer Hockey Corp., Bauer Hockey Retail Corp., Bauer Performance Sports Uniforms Corp., BPS Canada Intermediate Corp., BPS Diamond Sports Corp., Easton Baseball/Softball Corp., KBAU Holdings Canada, Inc., Performance Lacrosse Group Corp., PSG Innovation Corp., Bauer Hockey Retail Inc., Bauer Hockey, Inc., Bauer Performance Sports Uniforms Inc., BPS Diamond Sports Inc., BPS US Holdings Inc., Easton Baseball/Softball Inc., Performance Lacrosse Group Inc., and PSG Innovation Inc. (collectively, with the Company, the "**PSG Entities**"), taking into consideration the historical performance of the PSG Entities, the assets of the PSG Entities, the prospects of the PSG Entities, and the current and long-term liabilities of the PSG Entities, and has considered various alternatives in respect of these matters;

**AND WHEREAS**, the Board has received, reviewed and considered the (i) unanimous recommendations of the special committee (the "**Special Committee**") of the Board with respect to each matter put forward for consideration by the Board; and (ii) materials presented by the Company's senior management and its legal and financial advisors regarding the liabilities and liquidity of the PSG Entities, the strategic alternatives available to them and the impact of the foregoing on the PSG Entities' businesses;

**AND WHEREAS**, the Board has consulted with the Company's senior management and its legal and financial advisors and has reviewed such other materials and information it has deemed relevant to consider each of the strategic alternatives reasonably available to the Company and the other PSG Entities in light of the PSG Entities' financial position;

**AND WHEREAS**, the Company and the other PSG Entities are facing liquidity issues and will not have the liquidity needed to meet their obligations and the Board has determined that it is advisable and in the best interests of the Company and the other PSG Entities, their creditors and other stakeholders to implement a restructuring (the "**Restructuring**") of the PSG Entities;

**AND WHEREAS**, it would be advisable and appropriate for the Restructuring to be implemented, in part, through: (a) a proceeding (the "**CCAA Proceeding**") under the *Companies' Creditors Arrangement Act*, R.SC., 1985, c. C-36 (the "**CCAA**") before the Ontario Superior Court of Justice, Commercial List (the "**Canadian Court**"); and (b) a voluntary petition for relief (the "**Petition**") and a case under Chapter 11 (the "**Chapter 11 Case**," and together with the CCAA Proceeding, the "**Bankruptcy Cases**") of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S. Court**");

01:19469966.1

1

6623801 v13

**AND WHEREAS**, in connection with the Restructuring, the Board has reviewed and considered the Company's need for financing in connection with the Bankruptcy Cases, and has determined that it is in the best interests of the Company, its creditors, employees, stakeholders, and other interested parties, for the PSG Entities to enter into the debtor-in-possession financing and related agreements and amendments thereto with the institutions from time to time party thereto, pursuant to which the PSG Entities will obtain postpetition debtor-in-possession financing to fund the Bankruptcy Cases and refinance certain of the PSG Entities' prepetition debt, and grant certain liens and security interests required thereby;

**AND WHEREAS**, the Board wishes to ratify, confirm and approve the appointment of Brian J. Fox as Chief Restructuring Officer (the **"Chief Restructuring Officer"**) of the Company, holding such office at the discretion of the Board, effective October 30, 2016;

**AND WHEREAS**, the Company wishes to enter into an asset purchase agreement (the **"Asset Purchase Agreement"**) by and among, *inter alia*, the Company and 9938982 Canada Inc. (the **"Stalking Horse Purchaser"**), an acquisition vehicle controlled by a group of investors led by Sagard Capital Partners, L.P. and Fairfax Financial Holdings Limited, pursuant to which the Stalking Horse Purchaser will purchase substantially all of the assets and assume certain liabilities of the Company and its North American subsidiaries for U.S.$575,000,000 million in aggregate, assume related operating liabilities and serve as a "stalking horse" bidder through the Restructuring;

**AND WHEREAS**, it was noted that the transaction with the Stalking Horse Purchaser will constitute a "related party transaction" pursuant to Multilateral Instrument 61-101 – *Protection of Minority Security Holders in Special Transactions* (**"MI 61-101"**), but is exempt from the formal valuation and minority shareholder approval requirements of MI 61-101 as a result of the bankruptcy and insolvency exemption under MI 61-101;

**AND WHEREAS**, it is desirable and in the best interests of the PSG Entities, that a motion be brought by the Company before the Canadian Court and U.S. Court for an order approving bid protections for the Stalking Horse Purchaser and scheduling an auction sale hearing (the **"Bidding Procedures Order"**) that acknowledges the Asset Purchase Agreement as a baseline or "stalking horse bid," among other things;

**AND WHEREAS**, in connection with the Restructuring, and upon unanimous recommendation of the compensation committee of the Board, the Board has determined that it is desirable and in the best interests of the PSG Entities to adopt key employee retention plans and key employee incentive plans as a means of, among other things, encouraging the continued commitment of key employees and the senior officers of the PSG Entities;

**AND WHEREAS**, the Company, a debtor and a debtor-in-possession, proposes to enter into a super-priority debtor-in-possession term loan credit agreement (the **"Term DIP Credit Agreement"**) among, *inter alios*, the Company, as borrower, certain subsidiaries of the Company, as guarantors, 9938982 Canada Inc., as administrative agent (in such capacity, the **"Term DIP Administrative Agent"**) and as collateral agent (in such capacity, the **"Term DIP Collateral Agent"**, and together with the Term DIP Administrative Agent, the **"Term**

DIP Agents") and each lender from time to time party thereto (collectively, the "**Term DIP Lenders**") pursuant to which the Term DIP Lenders will make a term loan credit facility, consisting of (i) a refinancing term loan in the aggregate principal amount of up to US$331,000,000 and (ii) a delayed draw term loan in the aggregate principal amount of up to US$30,000,000 available to the Company on the terms and conditions contained in the Term DIP Credit Agreement.

**AND WHEREAS**, it is a condition of the availability of the term loan credit facilities under the Term DIP Credit Agreement that the Company execute and deliver certain security documents in favour of the Term DIP Collateral Agent as security for the payment and performance of the Company's obligations, including under such Term DIP Credit Agreement;

**AND WHEREAS**, the Company proposes to enter into a super-priority debtor-in-possession ABL credit agreement (the "**ABL DIP Credit Agreement**", and together with the Term DIP Credit Agreement, the "**DIP Credit Agreements**") among, *inter alios*, Bauer Hockey Corp., a debtor and a debtor-in-possession, as lead Canadian borrower, Bauer Hockey, Inc., a debtor and a debtor-in-possession, as lead U.S. borrower, each of the other borrowers from time to time party thereto (collectively, the "**ABL DIP Borrowers**") the Company, as parent, each of the guarantors from time to time party thereto, Bank of America, N.A., as administrative agent (in such capacity, the "**ABL DIP Administrative Agent**") and as collateral agent (in such capacity, the "**ABL DIP Collateral Agent**", and together with the ABL DIP Administrative Agent, the "**ABL DIP Agents**") and each lender from time to time party thereto (collectively, the "**ABL DIP Lenders**") pursuant to which the ABL DIP Lenders will make available to the ABL DIP Borrowers funds in an initial aggregate principal amount at any time up to US$200,000,000, subject to the terms and conditions contained in the ABL DIP Credit Agreement;

**AND WHEREAS**, it is a condition of the availability of the credit facilities under the ABL DIP Credit Agreement to the ABL DIP Borrowers that the Company provide a guarantee contained in the ABL DIP Credit Agreement and execute and deliver certain security documents in favour of the ABL DIP Collateral Agent as security for the payment and performance of the Company's obligations to the Secured Parties (as defined therein);

**AND WHEREAS**, the ABL DIP Borrowers are subsidiaries of the Company and due to the close business and financial relationships between the Company, the ABL DIP Borrowers and the other affiliates party to the transactions contemplated by the ABL DIP Credit Agreement, the Company will derive substantial direct and indirect benefits from such transactions and therefore the Company considers it in its best interest to provide such guarantee contained in the ABL DIP Credit Agreement.

**BE IT RESOLVED THAT:**

Commencement of CCAA Proceeding and Chapter 11 Case

1.    In the judgment of the Board, it is desirable and in the best interests of the Company and the other PSG Entities, their creditors and other stakeholders to implement the Restructuring and the Company is hereby authorized and directed to:

(a) make an application on behalf of the Company for an order seeking relief under the provisions of the CCAA from the Canadian Court;

(b) file the Petition and commence the Chapter 11 Case in the U.S. Court, which Chapter 11 Case may be consolidated with that of any of the other PSG Entities;

(c) seek the assistance of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States of America or any other nation or state to recognize the CCAA Proceeding and the Chapter 11 Case or to give effect to any order made in the CCAA Proceeding and the Chapter 11 Case; and

(d) take any other action or proceeding in Canada, the United States of America, or any other nation or state to contest or defend any action or proceeding by any creditor in Canada, the United States of America, or any other nation or state.

2.  The Company is authorized to issue a press release (substantially in the form presented for review to the Board) announcing, *inter alia*, the application for protection under the CCAA and the Bankruptcy Code. The filing of such press release and the associated material change report with the Securities and Exchange Commission on EDGAR on Form 8-K and the Canadian securities regulators on SEDAR will be conclusive evidence that the approval and filing thereof has been authorized by these resolutions.

3.  Any director or officer of the Company is authorized and directed to execute, deliver and file or to cause the execution, delivery and filing of, in the name and on behalf of the Company, such petitions, schedules, motions, lists, applications, pleadings, declarations, affidavits and other papers in the Canadian Court and the U.S. Court and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, investment bankers and other professionals, and to take and perform any and all further acts and deeds as such person may, in his or her opinion, deem necessary, proper and/or desirable in connection with the CCAA Proceeding, Chapter 11 Case or any related proceedings, including, without limitation, negotiating, executing, delivering and performing any and all documents, agreements, certificates and/or instruments in connection with the transactions and professional retentions set forth in this resolution, with a view to the successful completion of the CCAA Proceeding and the Chapter 11 Case.

4.  The Company is authorized and directed, as the direct or indirect parent of each of the other PSG Entities, to cause each of the PSG Entities to execute and deliver any documents, agreements and certificates necessary in connection with the CCAA Proceeding and the Chapter 11 Case authorized by the foregoing resolutions, and to perform their respective obligations and carry out their respective duties thereunder and to execute, deliver and file any and all documents, agreements, certificates and/or instruments contemplated thereby, and each PSG Entity is hereby authorized, approved and directed to enter into and perform such actions in such

manner as may be authorized and approved by the board of directors or similar governing body of each such PSG Entity; and these resolutions shall be treated as the consent of the Company to the taking of such actions by the PSG Entities.

Term Debtor-in-Possession Credit Facility

5.      The Company is authorized to borrow up to US$331,000,000 from the Term DIP Lenders, upon and subject to the terms and conditions contained in the Term DIP Credit Agreement, and the Company is authorized to enter into, execute, deliver and perform its obligations under the Term DIP Credit Agreement, substantially in the form presented to the directors of the Company, which form and all transactions contemplated thereby are hereby approved with such amendments as the signatory thereto may approve as necessary or advisable.

6.      As security for the payment and performance of the Company's obligations under the Term DIP Credit Agreement and the other credit documents to which the Company is a party in connection with the Term DIP Credit Agreement, the Company is authorized to grant security interests in, and mortgage, charge, hypothecate, pledge and assign, all or substantially all of the property and undertaking of the Company now owned or hereafter acquired to the Term DIP Collateral Agent, for its own benefit and for the benefit of the Secured Parties (as defined in the Term DIP Security Documents as defined below), upon and subject to the terms contained in the security documents required to be delivered by it pursuant to the terms of the Term DIP Credit Agreement including, without limitation, the following documents (collectively, the "**Term DIP Security Documents**"), each substantially in the form presented to the directors of the Company with such amendments as the signatory thereto may approve as necessary or advisable:

   i.   a term loan Canadian security agreement; and

   ii.  a deed of hypothec (the "**Term DIP Deed of Hypothec**") in favour of the Term DIP Collateral Agent, as hypothecary representative (*fondé de pouvoir*) for the Secured Parties (as therein defined), hypothecating the universality of the Company's present and future movable and immovable property for an amount of $1,320,000,000, as well as any additional amount required pursuant to the Term DIP Credit Agreement, with interest thereon at the rate of 25% per annum.

ABL Debtor-in-Possession Credit Facility

7.      The Company is authorized to enter into and perform its obligations under the ABL DIP Credit Agreement, including to guarantee the payment and performance of the obligations of each of the other Credit Parties (as defined therein) to the ABL DIP Lenders and the ABL DIP Agents under the ABL DIP Credit Agreement and the other credit documents to which the other Credit Parties are a party in connection with the ABL DIP Credit Agreement, upon and subject to the terms and conditions contained in the ABL DIP Credit Agreement in favour of the ABL DIP Collateral

Agent, for its benefit and for the benefit of the Secured Parties (as defined therein), substantially in the form presented to the directors of the Company with such amendments as the signatory thereto may approve as necessary or advisable.

8. As security for the payment and performance of the Company's obligations under the ABL DIP Credit Agreement and the other credit documents to which the Company is a party in connection with the ABL DIP Credit Agreement, the Company is authorized to grant security interests in, and mortgage, charge, hypothecate, pledge and assign, all or substantially all of the property and undertaking of the Company now owned or hereafter acquired to the ABL DIP Collateral Agent, for its own benefit and for the benefit of the Secured Parties (as defined in the ABL DIP Security Documents as defined below), upon and subject to the terms contained in the security documents required to be delivered by it pursuant to the terms of the ABL DIP Credit Agreement including, without limitation, the following documents (collectively, the **"ABL DIP Security Documents"**), each substantially in the form presented to the directors of the Company with such amendments as the signatory thereto may approve as necessary or advisable:

  i. an ABL Canadian security agreement; and

  ii. a deed of hypothec (the **"ABL DIP Deed of Hypothec"**, and together with the Term DIP Deed of Hypothec, the **"Deeds of Hypothec"**) in favour of the ABL DIP Collateral Agent, as hypothecary representative (*fondé de pouvoir*) for the Secured Parties (as therein defined), hypothecating the universality of the Company's present and future movable and immovable property for an amount of $660,000,000, as well as any additional amount required pursuant to the ABL DIP Credit Agreement, with interest thereon at the rate of 25% per annum.

### Debtor-in-Possession Intercreditor Agreement

9. The Company is authorized to enter into and perform its obligations under an intercreditor agreement among, *inter alios*, the Company, the Term DIP Agents, the ABL DIP Agents, the Prepetition ABL Administrative Agent and the Prepetition ABL Collateral Agent (each as defined therein) (the **"DIP Intercreditor Agreement"**) confirming the respective rights, obligations and priorities of the parties thereto, in substantially the form made available to the directors of the Company with such amendments as the signatory thereto may consider necessary or advisable.

### Debtor-in-Possession Financing

10. Any one officer or director of the Company acting alone and, in respect of the Deeds of Hypothec only, Howard Rosenoff, Daniel Tsarevsky or any other lawyer practising at Stikeman Elliott LLP, acting alone, is authorized to:

a.  execute and deliver the agreements substantially in the forms of the Term DIP Credit Agreement, the ABL DIP Credit Agreement, the Term DIP Security Documents, the ABL DIP Security Documents and the DIP Intercreditor Agreement made available to the directors of the Company, with such amendments as such officer or director may approve as necessary or advisable (collectively, the "**Documents**"), and such execution will be conclusive evidence of his or her approval;

b.  execute and deliver such other documents as required by the Term DIP Agents or the ABL DIP Agents or as appear to such officer or director to be necessary or advisable in order to carry out this resolution and the obligations of the Company under the DIP Credit Agreements or any of the Documents including, without limitation, any further agreements, intercreditor agreements, security agreements, guarantees, debentures, pledges, intellectual property security agreements, other security documents, waivers, powers of attorney, assignments, consents, acknowledgements, memoranda, declarations, undertakings, certificates, instruments and share transfer forms (the "**Further Documents**"), and such execution will be conclusive evidence of his or her approval;

c.  without limiting the foregoing, execute any Document or Further Document by inserting, attaching, or otherwise associating such person's electronic signature in, to or with such Document or Further Document (including causing any of the foregoing to occur), and the insertion, attachment or other association of such person's electronic signature will be conclusive evidence of such person's authorization of the foregoing; and

d.  take such further and other action as appears to such officer or director to be necessary or advisable in order to carry out this resolution and the obligations of the Company under any of the Documents or any Further Document and the taking of such action will be conclusive evidence of his or her approval.

<u>Asset Purchase Agreement</u>

11.    The Company is authorized and directed to enter into and perform its obligations under the Asset Purchase Agreement, substantially in the form of the Asset Purchase Agreement presented to the Board, with such alterations, amendments, deletions and other changes thereto as any director or officer of the Company may consider necessary or advisable, and the execution and delivery by such director or officer shall be evidence of this and his or her approval.

12.    Any director or officer of the Company is authorized and directed to take any and all such further actions, to execute, deliver and file or to cause the execution, delivery and filing of, in the name and on behalf of the Company, any and all agreements, certificates, instruments and other documents relating to, contemplated by, necessary and/or desirable in connection with the Asset Purchase Agreement, including the Seller Disclosure Letter, Deposit Escrow Agreement and Work Fee

Letter (all such agreements, certificates, instruments and other documents collectively referred to as the "**Asset Purchase Documents**").

13.    Any director or officer of the Company is hereby authorized and directed to prepare, execute and deliver the Asset Purchase Documents and to do and to perform or cause to be done and performed any and all such other acts and things as such director or officer may determine to be necessary, desirable or advisable in order to carry out the purposes and intent of the foregoing resolutions, the execution and delivery of the Asset Purchase Documents and the performance or causing the performance of any and all such other acts and things to be conclusive evidence of such determination.

Bidding Procedures Order

14.    The Company is authorized and directed to bring a motion to the Canadian Court and the U.S. Court (the "**Bidding Procedures and Sales Motion**") under the CCAA and the Bankruptcy Code for the Bidding Procedures Order and to schedule a hearing to approve a sale of the Company.

15.    Any officer or director of the Company is authorized and directed to:

(a)    execute, deliver and file on behalf of the Company such affidavits as such person may, in his or her opinion, deem necessary and/or desirable in connection with the Bidding Procedures and Sales Motion or any related proceedings, in such form as such person approves, his or her execution and delivery to be conclusive evidence of his or her approval; and

(b)    take any action as such person may, in his or her opinion, deem necessary and/or desirable in connection with the Bidding Procedures and Sales Motion or any related proceedings.

Employee Compensation Arrangements

16.    On the unanimous recommendation of the compensation committee of the Board, the key employee retention plans (the "**KERP**") and the key employee incentive plans (the "**KEIP**"), in substantially the forms presented to the Board, are hereby authorized and approved, and any director or officer of the Company is authorized and directed to execute and deliver the KERP and KEIP with such changes, additions and deletions thereto, as such director or officer, in his or her discretion may consider advisable, and the execution of the KERP and KEIP by any such director or officer will be conclusive evidence that each of the KERP and KEIP is in the form authorized by these resolutions and that the Company, subject to Canadian Court and U.S. Court approval, is authorized to perform its obligations under the KERP and KEIP.

17.    Subject to Canadian Court and U.S. Court approval, any director or officer of the Company is authorized and directed to take any action as such person may, in his or

her opinion, deem necessary and/or desirable in connection with the KERP and KEIP.

Advisors and Agents

18.    The law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP (**"Paul, Weiss"**) be, and hereby is, retained as United States legal counsel in connection with the Restructuring and as counsel to the Company in the Company's Chapter 11 Case to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights, including the preparation of pleadings and filings in the Chapter 11 Case; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of Paul, Weiss.

19.    The law firm of Stikeman Elliott LLP (**"Stikeman Elliott"**) be, and hereby is, retained as Canadian legal counsel in connection with the Restructuring and as counsel to the Company in the Company's CCAA Proceeding to represent and assist the Company in carrying out its duties under the CCAA, and to take any and all actions to advance the Company's rights, including the preparation of pleadings and filings in the CCAA Proceeding; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of Stikeman Elliott.

20.    The law firm of Young Conaway Stargatt & Taylor, LLP (**"Young Conaway"**) be, and hereby is, retained as United States legal co-counsel in connection with the Restructuring and as counsel to the Company in the Company's Chapter 11 Case to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights, including the preparation of pleadings and filings in the Chapter 11 Case; and in connection therewith, the officers and directors of the Company are hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of Young Conaway.

21.    The law firm of Bennett Jones LLP (**"Bennett Jones"**) be, and hereby is, retained as independent legal counsel to the Board in connection with the Company's Restructuring; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of Bennett Jones.

22.    The law firm of Richards Kibbe & Orbe LLP ("**RKO**") be, and hereby is, retained as independent legal counsel to the audit committee of the Board (the "**Audit Committee**") in connection with the Restructuring; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of RKO.

23.    Centerview LLP ("**Centerview**") be, and hereby is, retained as investment banker to the Special Committee in connection with the Company's Restructuring, Chapter 11 Case and CCAA Proceeding; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of Centerview.

24.    Alvarez & Marsal North America, LLC ("**A&M**") be, and hereby is, retained to provide the Company with a chief restructuring officer, who shall be Brian J. Fox, along with additional personnel to support the Chief Restructuring Officer and the Company in connection with the Company's Restructuring, Chapter 11 Case and CCAA Proceeding; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of A&M.

25.    AlixPartners, LLP ("**AlixPartners**") be, and hereby is, retained as financial advisors to the Audit Committee in connection with the Company's Restructuring, Chapter 11 Case and CCAA Proceeding; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of AlixPartners.

26.    Joele Frank, Wilkinson, Brimmer, Katcher ("**Joele Frank**") be, and hereby is, retained as communications and investor relations advisors to the Company in connection with the Company's Restructuring, Chapter 11 Case and CCAA Proceeding; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of Joele Frank.

27.    KPMG LLP ("**KPMG**") be, and hereby is, retained as auditors for the Company in connection with the Company's Restructuring; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the

Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of KPMG.

28.    Ernst & Young LLP ("E&Y") be, and hereby is, retained as financial advisors to the Company in connection with the Company's Restructuring and as the Monitor in connection with the CCAA Proceeding; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of E&Y.

29.    Prime Clerk (collectively with Paul, Weiss, Stikeman Elliott, Young Conaway, Bennett Jones, Centerview, A&M and the Chief Restructuring Officer, Joele Frank, KPMG and E&Y, the "Advisors") be, and hereby is, retained as the notice, claims, solicitation and balloting agent for the Company in connection with the Company's Restructuring, Chapter 11 Case and CCAA Proceeding; and in connection therewith, any director or officer of the Company is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers prior to the filing of the Petition and the commencement of the CCAA Proceeding, and to cause to be filed an appropriate application for authority to retain the services of Prime Clerk.

30.    The Advisors are hereby authorized to take any and all actions necessary or desirable to advance the PSG Entities' rights and obligations and facilitate the commencement of the CCAA Proceeding and the Chapter 11 Case, including, among other things, filing any petitions for relief and pleadings seeking approval from the U.S. Court and the Canadian Court as reasonably necessary to carry out the Company's Restructuring, consummating the Asset Purchase Agreement and obtaining debtor-in-possession financing.

Appointment and Confirmation of Officer of the Company

31.    The appointment of Brian J. Fox as the Chief Restructuring Officer of the Company effective from and after October 30, 2016, holding such office at the discretion of the Board is hereby ratified, confirmed and approved.

32.    The following persons are confirmed as the officers of the Company from and after October 30, 2016, holding the office(s) specified at the discretion of the directors of the Company:

| Name | Office(s) held |
|------|----------------|
| Harlan M. Kent | Chief Executive Officer |
| Mark J. Vendetti | Executive Vice President, Chief Financial Officer |
| Michael J. Wall | Executive Vice President, General Counsel and Corporate Secretary |

Brian J. Fox                          Chief Restructuring Officer

General

33.   Any director or officer of the Company be and is hereby authorized and directed, for
      and on behalf of the Company, to negotiate, finalize, file, execute and deliver or
      cause to be negotiated, finalized, filed executed and delivered, (or cause such things
      to be done in respect of) such other documents, agreements, certificates, applications,
      notices, filings, authorizations, elections, undertakings and instruments, in the name
      and on behalf of the Company, or otherwise, and to take or cause to be taken any
      and all such further action, including, without limitation, to pay all fees and
      expenses in connection with the transactions contemplated by the foregoing
      resolutions, as such director or officer of the Company may deem necessary or
      desirable in order to carry out the foregoing resolutions, the authority for the
      execution of such documents, agreements, certificates, applications, filings,
      undertakings and instruments and the doing of such other acts or things to be
      conclusively evidenced thereby.

34.   Without limiting the foregoing, any director or officer of the Company be and is
      hereby authorized to execute any document, agreement, certificate, application,
      notice, filing, authorization, election, undertaking or instrument by inserting,
      attaching, or otherwise associating such person's electronic signature in, to or with
      such document (including causing any of the foregoing to occur), and the insertion,
      attachment or other association of such person's electronic signature will be
      conclusive evidence of such person's authorization of the foregoing.

35.   Any director or officer of the Company be and is hereby authorized and directed, for
      and on behalf of the Company, to perform the obligations of the Company under the
      Bankruptcy Code or CCAA, with all such actions to be performed in such manner,
      and all such certificates, instruments, guaranties, notices and documents to be
      executed and delivered in such form, as the director or officer performing or
      executing the same shall approve, and the performance or execution thereof by such
      director or officer shall be conclusive evidence of the approval thereof by such
      director and officer and by the Company.

36.   Any agreements, instruments or other documents executed and delivered and any
      and all acts and things previously done and performed, or caused to be done and
      performed, in the name and on behalf of the Company, prior to the date of these
      resolutions in connection with or related to the matters set forth in or reasonably
      contemplated or implied by the foregoing resolutions be, and each of them hereby is,
      adopted, ratified, confirmed and approved in all respects as the acts and deeds of the
      Company.

37.   In connection with the transactions contemplated by the preceding resolutions, each
      director and officer be, and each of them individually hereby is, authorized, in the
      name and on behalf of the Company, to certify these resolutions and any more
      formal or detailed resolutions as such director or officer may deem necessary,

appropriate or desirable to effectuate the intent of the foregoing resolutions; and that thereupon such resolutions shall be deemed adopted as and for the resolutions of the Board as if set forth at length herein.

| Debtor Name | <u>Performance Sports Group Ltd .</u> |
|---|---|

United States Bankruptcy Court for the: _____ District of <u>Delaware</u>

Case Number (if known) _____

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors  12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 40 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐ Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    <u>10/31/2016</u>
                MM / DD / YYYY

x  <u>/s/ Brian J. Fox</u>                          <u>Brian J. Fox</u>
   Signature of authorized representative of debtor      Printed name

   Title   <u>Chief Restructuring Officer</u>

Official Form 204

# Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 40 Largest Unsecured Claims on a Consolidated Basis and Are Not Insiders     12/15

A list of creditors holding the 40 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 40 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | WILMINGTON SAVINGS FUND SOCIETY, FSB ATTN: BENNET S. SILVERBERG C/O BROWN RUDNICK LLP SEVEN TIMES SQUARE NEW YORK, NY 10036 UNITED STATES | BENNET S. SILVERBERG EMAIL - bsilverberg@brownrudnick.com PHONE - 212-209-4924 FAX - | Litigation | Contingent, Unliquidated and Disputed | | | Undetermined |
| 2 | SUREWIN WORLDWIDE LTD, TAIWAN BRANCH ATTN: HUNG FANGLAN CHAIRMAN BONNY SPORTS CORP. NO 13, LANE 64 MIN-SHENG ST, TAN TZU TAICHUNG, 31450 TAIWAN | HUNG FANGLAN EMAIL - JASON@BONNY.COM; BONNYIR@BONNYSPORTS.COM PHONE - 886 (4) 2537-6022 FAX - | Trade Claim | | | | $ 6,214,232.13 |
| 3 | SIGMA GLOBAL COMPANY LTD. NEIHU DISTRICT 114 6 FL, NO 168, RUEI GUANG ROAD TAIPEI, TAIWAN ROC, TAIWAN | EMAIL - PHONE - FAX - | Trade Claim | | | | $ 3,046,518.24 |
| 4 | GROWTH LINK OVERSEAS CO. LTD. TWO CHINCHEN EXCHANGE SQUARE NORTH POINT, HONG KONG, CHINA | EMAIL - PHONE - FAX - | Trade Claim | | | | $ 2,776,047.42 |
| 5 | SIERRA PACIFIC CONSTRUCTORS, INC ATTN: CARY GERHARDT PRESIDENT 22212 VENTURA BLVD. WOODLAND HILLS, CA 91364 UNITED STATES | CARY GERHARDT EMAIL - INFO@SPCINC.COM PHONE - (818) 225-600 FAX - (818) 225-6001 | Trade Claim | | | | $ 2,539,853.00 |
| 6 | CORTINA GLOBAL CORP 131 SUNG CHIANG RD STE 901, 9TH FL TAIPEI, 10485 TAIWAN | EMAIL - PHONE - FAX - | Trade Claim | | | | $ 1,679,799.31 |
| 7 | PROSPEROUS INTERNATIONAL LTD ATTN: SHUZHONG MAO CEO UNIT 1-2, 1/F, JOIN-IN HANG SING CN KWAI CHUNG, 11111 HONG KONG | SHUZHONG MAO EMAIL - PHONE - (852)-24243326 FAX - (852)-24804421 | Trade Claim | | | | $ 1,077,372.04 |
| 8 | MERRY MIGHT CO., LTD 4TH FL, 100, SEC 2, CHANG-AN EAST R TAIPEI, 11111 TAIWAN | EMAIL - PHONE - FAX - | Trade Claim | | | | $ 1,049,686.44 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | | |
|---|---|---|---|---|---|---|---|---|
| 9 | VERACTION, LLC<br>ATTN: CHRIS CONNELL<br>CEO<br>3400 PLAYERS CLUB PARKWAY<br>SUITE 300<br>MEMPHIS, TN 38125<br>UNITED STATES | CHRIS CONNELL<br>EMAIL -<br>PHONE - (901) 755-0110<br>FAX - (901) 757-5550 | Trade Claim | | | | | $ | 994,791.99 |
| 10 | SINMAX INTL. CO., LTD<br>4F, 100, SEC.2, CHANG -AN EAST RD<br>TAIPEI, 11111<br>TAIWAN | EMAIL -<br>PHONE - 038 879-137<br>FAX - 038 879-137 | Trade Claim | | | | | $ | 920,800.42 |
| 11 | OHH ACQUISITION CORPORATION<br>7101 EXECUTIVE CENTER DRIVE<br># 333<br>BRENTWOOD, TN 37027-5236<br>UNITED STATES | EMAIL -<br>PHONE - (615) 880-3892<br>FAX - | Trade Claim | | | | | $ | 748,968.43 |
| 12 | WONEEL AMERICA, INC.<br>ATTN: DC KIM<br>PRESIDENT<br>1520 OAK ST<br>SOUTH PASADENA, CA 91030<br>UNITED STATES | DC KIM<br>EMAIL -<br>WONEELAMERICA@GMAIL.COM<br>PHONE - (626) 799-0600<br>FAX - (626) 568-0976 | Trade Claim | | | | | $ | 447,408.96 |
| 13 | PT. INKO JAVA<br>ATTN: IW HAN<br>CEO<br>JL RAYA PTP XVIII NGOBO,<br>KARANGJATI<br>KAB SEMARANG, 50552<br>INDONESIA | IW HAN<br>EMAIL - IKJ-MKT@HOTMAIL.COM<br>PHONE - (62) 298-522147<br>FAX - (62) 298-522146 | Trade Claim | | | | | $ | 408,786.64 |
| 14 | HO JEON LIMITED<br>ATTN: PARK YONGCHUL<br>REPRESENTATIVE DIRECTOR<br>11-12TH F, SHINHWA BLDG 34-1<br>MAPO GU, MAPO DONG<br>SEOUL, 121-735<br>KOREA, REPUBLIC OF | PARK YONGCHUL<br>EMAIL -<br>PHONE - (82) 2 710-5002<br>FAX - (82) 2 710-5086 | Trade Claim | | | | | $ | 377,745.30 |
| 15 | JEFFREY I. CARTON<br>C/O DENLEA & CARTON LLP<br>2 WESTCHESTER PARK DRIVE<br>SUITE 410<br>WHITE PLAINS, NY 10604<br>UNITED STATES | EMAIL - jcarton@denleacarton.com<br>PHONE - 914-331-0100<br>FAX - | Settlement of Class Action Lawsuit | | | | | $ | 350,000.00 |
| 16 | AASONN, LLC<br>ATTN: RANDALL J. WOMACK<br>CEO<br>184 SHUMAN BOULEVARD<br>SUITE 530<br>NAPERVILLE, IL 60563<br>UNITED STATES | RANDALL J. WOMACK<br>EMAIL -<br>PHONE - (630) 718-1562<br>FAX - (630) 718-1564 | Trade Claim | | | | | $ | 300,447.50 |
| 17 | SMART & BIGGAR<br>ATTN: A. DAVID MORROW<br>PARTNER<br>1000 DE LA GAUCHETIERE ST<br>STE 3300<br>MONTREAL, QC H3B 4W5<br>CANADA | A. DAVID MORROW<br>EMAIL - MONTREAL@SMART-BIGGAR.CA<br>PHONE - (514) 954-1500<br>FAX - (514) 954-1396 | Trade Claim | | | | | $ | 278,688.06 |
| 18 | HOLD GOLD TRADING COMPANY LTD<br>PO BOX 957<br>OFFSHORE INCORPORATION CENTRE<br>TORTOLA, VI<br>BRITISH VIRGIN ISLANDS | EMAIL -<br>PHONE -<br>FAX - | Trade Claim | | | | | $ | 269,657.52 |
| 19 | XIAMEN PHEASANT HI-TECH ALUM CO LTD<br>NO. 3 INDUSTRIAL DISTRICT<br>INCUN HOUX<br>IAXMEN, 361024<br>CHINA | EMAIL -<br>PHONE - (86) 5926260791<br>FAX - (86) 5926260790 | Trade Claim | | | | | $ | 240,193.50 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | | |
|---|---|---|---|---|---|---|---|---|---|
| 20 | LOUMANIA, INC. ATTN: LOUISE LEFEBVRE PRESIDENT 1730 CUNARD STREET STE. 100 LAVAL, QC  H7S 2B2 CANADA | LOUISE LEFEBVRE EMAIL - INFO@LOUMANIA.COM PHONE - (800) 975-1440 FAX - | Trade Claim | | | | | $ | 239,631.12 |
| 21 | JIAN RIN SPORTING GOODS 8 XIUSHAN INDUSTRIAL RD SHAXIA TOWN ZHONGSHAN CITY, CHINA | EMAIL - TW@JIANRIN.COM PHONE - (866) 6-2987722 FAX - (866) 6-298-6078 | Trade Claim | | | | | $ | 236,236.40 |
| 22 | ALLIANCE PRECISION PLASTICS ATTN: MART RAIDMAE DIRECTOR OF ENGINEERING 1220 LEE ROAD ROCHESTER, NY  14606 UNITED STATES | MART RAIDMAE EMAIL - PHONE - (585) 426-5310 FAX - (585) 426-5081 | Trade Claim | | | | | $ | 235,692.95 |
| 23 | PONDEROSA LEATHER GOODS CO. IN ATTN: PETER CHACON #2 SUMULONG HIGHWAY, BO MAYAMOT ANTIPOLO CITY,  1870 PHILIPPINES | PETER CHACON EMAIL - PHONE - (632) 646-2313 FAX - | Trade Claim | | | | | $ | 231,253.20 |
| 24 | SKY OCEAN ENTERPRISES LIMITED 8F-2 NO. 631,SEC. 1, CHUNG DER RD. TAICHUNG , TAIWAN | EMAIL - PHONE - 886 4 2230 3132 FAX - 886 4 2303 133 | Trade Claim | | | | | $ | 214,009.35 |
| 25 | STAHLS SNS LLC ATTN: TED STAHL 6353 E 14 MILE ROAD STERLING HEIGHTS, MI  48312 UNITED STATES | TED STAHL EMAIL - INFO@STAHLSINTERNATIONAL.COM PHONE - (586) 772-5551 FAX - (586) 772-3978 | Trade Claim | | | | | $ | 208,416.38 |
| 26 | SPORTSKITE INTERNATIONAL CO LT ATTN: GIANT KAO PRESIDENT NO 5, LANE 31, SIN-TUNG ST TAIPEI,  10590 TAIWAN | GIANT KAO EMAIL - SERVICE@SPORTSKITE.COM.TW PHONE - (886) 2*27635455 FAX - | Trade Claim | | | | | $ | 207,517.20 |
| 27 | LES CREATIONS MORIN INC. 2575 ST JOSEPH BLVD BOX 26 DRUMMONVILLE, QC  J2B 6V6 CANADA | EMAIL - DMORISSETTE@CREATIONSMORIN.COM PHONE - (819) 474-4664 | Trade Claim | | | | | $ | 205,262.50 |
| 28 | GALLANT INDUSTRIES CO LTD ATTN: VICKY LIN SENIOR MANAGER 858, SEC 4, CHUNG CHING RD TAICHUNG CITY,  42880 TAIWAN | VICKY LIN EMAIL - BAG@GALLANTBAG.COM.TW PHONE - (886) 4-25667591 FAX - (866) 4-25664830 | Trade Claim | | | | | $ | 203,934.60 |
| 29 | OLSON & CO., INC ATTN: NICOLE NYE SVP, MARKETING 420 NORTH 5TH STREET SUITE 1000 MINNEAPOLIS, MN  55401 UNITED STATES | NICOLE NYE EMAIL - NICLOE.NYE@OLSON.COM PHONE - (612) 215-9800 FAX - | Trade Claim | | | | | $ | 180,264.00 |
| 30 | LES ESTAMPAGES  ISF STAMPING INC. 20 WINDSOR SHERBROOKE, QC  J1C 0E5 CANADA | EMAIL - PHONE - (819)-846-1044 FAX - (819)-846-4268 | Trade Claim | | | | | $ | 169,864.53 |
| 31 | NEW ERA CAP COMPANY, INC. ATTN: KATHLEEN PIENTKA BUSINESS DEVELOPMENT 160 DELAWARE AVENUE BUFFALO, NY  14202-2404 UNITED STATES | KATHLEEN PIENTKA EMAIL - PHONE - (716) 604-9000 FAX - (716) 604-9299 | Trade Claim | | | | | $ | 154,581.41 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| 32 | UFP TECHNOLOGIES ATTN: R. JEFFREY BAILLY CEO & PRESIDENT 100 HALE STREET NEWBURYPORT, MA 01950- UNITED STATES | R. JEFFREY BAILLY EMAIL - PHONE - (978) 352-2200 FAX - | Trade Claim | | | | $ 153,449.58 |
| 33 | VNSH, LLC 3580 WILSHIRE BLVD, SUITE 1020 LOS ANGELES, CA 90010 UNITED STATES | EMAIL - PHONE - (908) 289-5625 FAX - | Trade Claim | | | | $ 150,000.00 |
| 34 | TOP GLORY SPORTS (HONG KONG) LTD DBA: SHANGHAI ACASIA LUGGAGE CO LTD RM 403 HUA QIN INT'L BLDG-340 QUEEN HONG KONG, HONG KONG | EMAIL - PHONE - FAX - | Trade Claim | | | | $ 146,645.83 |
| 35 | DYNAC SPORTS CO. LTD 10F-3, NO.182, CHUNG-CHENG 2RD RD KAOHSIUNG, 80047 TAIWAN | EMAIL - PHONE - FAX - | Trade Claim | | | | $ 134,133.22 |
| 36 | POWER ACE INDUSTRIES PTE LTD. 49 JAPAN PEMIMPIN, 04-07 SINGAPORE, 577203 SINGAPORE | EMAIL - PHONE - (656) 258-1630 FAX - (656) 353-3316 | Trade Claim | | | | $ 126,225.94 |
| 37 | QRC LOGISTICS (1978) LTD. 3190 CARAVELLE DRIVE MISSISSAUGA, ON L4V 1K9 CANADA | EMAIL - PHONE - (905) 791-9004 FAX - | Trade Claim | | | | $ 125,384.54 |
| 38 | NINGBO RIZI DRESSES CO., LTD NO. 20 WENWEI ROAD, GULIN TOWN NINGBO, 315177 CHINA | EMAIL - PHONE - 86 574 88294168 FAX - 86 574 88427045 | Trade Claim | | | | $ 108,643.11 |
| 39 | UNITED STATES SPECIALTY SPORTS ATTN: MARK LINNEMANN CONSTITUTION & BYLAWS 611 LINE DRIVE KISSIMMEE, FL 34744 | MARK LINNEMANN EMAIL - MARK.LINNEMANN@USSA.COM PHONE - (800) 741-3014 FAX - | Trade Claim | | | | $ 106,250.00 |
| 40 | JRZ CANADA, INC. 1045 VINCENT-MASSEY QUEBEC CITY, QC G1N 4M8 CANADA | EMAIL - INFO@JRZ.CA PHONE - (418) 661-1410 FAX - (418) 661-4513 | Trade Claim | | | | $ 98,674.11 |

01:19341185.3

| Debtor Name | Performance Sports Group Ltd. |
| --- | --- |
| United States Bankruptcy Court for the: _____ District of Delaware | |
| Case Number (if known) _____ | |

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 40 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration: Consolidated Corporate Ownership Statement _____

I declare under penalty of perjury that the foregoing is true and correct.

| Executed on | 10/31/2016 | | |
| --- | --- | --- | --- |
| | MM / DD / YYYY | | |

| x | /s/ Brian J. Fox | | Brian J. Fox |
| --- | --- | --- | --- |
| | Signature of authorized representative of debtor | | Printed name |

| Title | Chief Restructuring Officer |
| --- | --- |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------x
                                        :
In re:                                  :
                                        :      Chapter 11
Performance Sports Group Ltd.           :
                                        :      Case No. 16– (____)
                Debtor.                 :
                                        :      (Joint Administration Pending)
                                        :
------------------------------------------------------------x
```

## CONSOLIDATED CORPORATE OWNERSHIP STATEMENT
## PURSUANT TO FED. R. BANKR. P. 1007(a)(1) and 7007.1

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of

Bankruptcy Procedure, BPS US Holdings Inc., a Delaware corporation and its affiliated entities

hereby state as follows:

1.  Bauer Performance Sports Uniforms Inc. (DE), BPS Diamond Sports Inc.

    (DE), and Performance Lacrosse Group Inc. (DE) are each 100% owned by

    Bauer Hockey, Inc. (VT).

2.  Bauer Hockey, Inc. (VT), Bauer Hockey Retail Inc. (DE), and Easton

    Baseball / Softball Inc. (DE) are each 100% owned by BPS US Holdings Inc.

    (DE).

3.  BPS US Holdings Inc. (DE) is 77.93% owned by Performance Sports Group

    Ltd. (Canada) and 22.07% owned by Bauer Hockey Corp. (Canada).

4.  Bauer Performance Sports Uniforms Corp. (Canada), BPS Diamond Sports

    Corp. (Canada), BPS Canada Intermediate Corp. (Canada), and Performance

    Lacrosse Group Corp. (Canada), are each 100% owned by Bauer Hockey

    Corp. (Canada).

5.  PSG Innovation Inc. (DE) is 100% owned by PSG Innovation Corp. (Canada).

6.  Bauer Hockey Corp. (Canada), Bauer Hockey Retail Corp. (Canada), Easton Baseball / Softball Corp. (Canada), and PSG Innovation Corp. (Canada) are all 100% owned by KBAU Holdings Canada, Inc. (Canada).

7.  KBAU Holdings Canada, Inc. (Canada) is 100% owned by Performance Sports Group Ltd. (Canada).

2